**Eddie Lee SADLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–85–01424–CR.**

Court of Appeals of Texas,
Dallas.

Feb. 26, 1987.

James A. Anderson, Dallas, for appellant.

Jeffrey B. Keck, Dallas, for appellee.

Before HOWELL, ROWE[1] and CARVER[2], JJ.

## ON MOTION FOR REHEARING

HOWELL, Justice.

On motion for rehearing, we withdraw our previous opinion. The following is now the opinion of the court. Eddie Lee Sadler appeals his conviction of involuntary manslaughter, for which the trial court assessed punishment at four years' confinement. The court suspended appellant's sentence and place him on probation for four years.

In his sole point of error, appellant contends that there is insufficient evidence that he acted recklessly in causing the death of his wife. We hold that the evidence was sufficient; accordingly, we affirm the trial court's judgment.

On October 20, 1984, appellant and his wife, Mary Lou Kirk, were engaged in a verbal altercation over appellant's actions earlier in the day. Kirk's ex-husband had come by the house to visit that day and appellant had let him in, much to the displeasure of Kirk. During the course of the argument, appellant told Kirk that if she did not stop arguing he was going to leave the house. Kirk replied, "You are not going any damned place," and proceeded to race from the bathroom to the bedroom, where the parties kept a pistol under the bed. Appellant ran after her to prevent her from securing the pistol. Both parties reached the bedroom at about the same time and began struggling by the bed for possession of the gun. Appellant gained possession of the gun and tried to keep it away from Kirk, but she kept struggling with him in an effort to take the pistol. During this struggle, the parties allegedly tripped over the telephone cord in the bedroom. As a result, Kirk fell on the bed and in the process she kicked appellant in the groin. This made him fall backwards, where his elbow hit the bedroom dresser, causing the pistol to discharge, killing Kirk. The police were summoned and, after an investigation, appellant was arrested and charged with murder. Trial was to the court and at the close of the evidence, the trial judge found appellant guilty of involuntary manslaughter. Appellant now contests the sufficiency of the evidence upon which he was convicted.

In reviewing the sufficiency of the evidence, we must determine, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App.1984). The only disputed element of the offense of which appellant was convicted was whether appellant acted recklessly.

The Texas Penal Code provides,

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX.PENAL CODE ANN. § 6.03(c) (Vernon 1974). This appeal is determined by *Thomas v. State,* 699 S.W.2d 845 (Tex. Crim.App.1985) (cafe operator shot by customer following altercation; held, defendant was not entitled to a charge on criminally negligent homicide), which states as follows:

---

1. The Honorable Gordon H. Rowe, Justice, succeeded the Honorable Cynthia H. Hollingsworth, Justice, at the expiration of her term on December 3, 1986.

2. The Honorable Spencer Carver, Justice retired, Texas Court of Appeals, Fifth District at Dallas, sitting by assignment.

Every case in which someone points a loaded gun at another does not require that a charge on criminally negligent homicide be given. Nor does the allegation of accidental discharge necessarily raise the issue. The attendant circumstances from which the defendant's mental state can be inferred must be collectively examined in light of the definition of criminally negligent conduct.

. . . .

Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another, indicates a person who is aware of a risk created by the conduct and disregards the risk. . . . That he does not anticipate a third person bumping him, causing the weapon to discharge, is a consideration that must be examined with the other evidence to determine awareness of the risk involved in pointing a loaded gun at another. However, in such a case, the awareness of the risk is not necessarily altered. It is not necessarily *inattentive* risk creation. . . . Rather, the risk is realized and actual harm results. Just because part of the conduct may be "involuntary" does not relieve a defendant of responsibility and culpability for the entire action.

. . . .

[E]very case must be examined in light of its particular facts and circumstances to determine if the defendant was unaware of the risk his conduct created.

. . . .

[A] defendant who is familiar with guns, who knows a gun is loaded, and who points it at another person, is consciously disregarding a risk that his conduct— pointing a loaded weapon at another— may cause harm or death and is at least reckless.

. . . .

We . . . reiterate that the emphasis should not be placed on the accidental discharge of the gun, although that is a circumstance that should be considered. Rather, all of the circumstances showing the defendant's mental state and aware- ness or risk of harm or death, given the circumstances, must be reviewed.

*Thomas,* 699 S.W.2d at 850–51 (emphasis in original).

When reviewed in the light most favorable to the prosecution, the evidence in this case supports the inference that appellant was aware of the risk involved in his conduct. Appellant testified that, following an argument with the deceased, he and the deceased ran toward their bed where they kept a pistol hidden under the mattress. The deceased attempted to gain possession of the pistol to prevent appellant from leaving the house. Appellant testified that he wanted to gain possession of the pistol because he was afraid that if the deceased reached the pistol first she would shoot him. This testimony indicates that appellant was aware of the risk of injury or death involved in the ensuing struggle over the pistol. *See Thomas,* 699 S.W.2d at 852.

The remaining inquiry is whether appellant consciously disregarded the risk created by his conduct. Proof of mental state must, by necessity, almost always depend upon circumstantial evidence. The trier of fact is to make its determination from all the circumstances. *Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Crim.App.1978). The record reflects that appellant gained possession of the gun and attempted to get out of the house. The deceased grabbed appellant and grabbed at the gun. Appellant testified that, during the ensuing struggle, he tripped over a telephone cord and, as he stumbled backward, his elbow struck the corner of the dresser, which caused the gun to discharge. Evidently, the pistol was pointed at the deceased with appellant's finger on the trigger during the struggle. It is also apparent that appellant did not engage the safety mechanism; nor did he attempt to hold the gun above his head and out of the reach of the deceased, who was four inches shorter than appellant. Based on these facts, a rational trier of fact could have found beyond a reasonable doubt that appellant did not take reasonable precautions, but consciously disregarded the risks attendant to a struggle over a loaded firearm.

It is virtual surplusage to point out that firearms are dangerous instrumentalities, and that their very purpose is to kill or injure should the necessity arise. It is mandatory that they be handled at all times with great care and the failure to do so may be legitimately viewed by the trier of the fact as "a gross deviation from the standard of care that an ordinary person would exercise...." TEX.PENAL CODE ANN. § 6.03(c) (Vernon 1974).

We have also examined the cases of *Simpkins v. State*, 590 S.W.2d 129 (Tex. Crim.App.1979); *Brooks v. State*, 548 S.W.2d 680, 683 (Tex.Crim.App.1977); *Gordon v. State*, 640 S.W.2d 743 (Tex.App.— San Antonio 1982, no pet.); and *Gonzales v. State*, 632 S.W.2d 899 (Tex.App.—Dallas 1982, pet. ref'd). Like *Thomas*, each involved a death from the discharge of a firearm and the trial court's refusal to give a charge on the lesser included offenses of manslaughter or criminally negligent homicide. We are not satisfied that they compel a different result. If so, they are limited by the subsequent *Thomas* decision, which commands that all of the circumstances be viewed in determining whether the issue was raised.

We point out a further dissimilarity in the above line of cases. In determining whether the defendant is entitled to a charge on a lesser included offense, the evidence is to be viewed most strongly in favor of the *accused*. *Thomas*, 699 S.W.2d at 851 ("evidence from any source raises the issue and ... credibility is not to be considered"). However, we are not concerned with whether appellant was entitled to a charge on a lesser included offense, but rather with whether the evidence is sufficient to prove involuntary manslaughter. Therefore, the evidence is to be viewed in the light most favorable to the State and the outcome determined by the "any rational jury" test. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We hold that the necessarily implied fact findings that appellant was aware of the risk involved in his conduct and that he consciously disregarded that risk are sufficiently supported by the evidence and meet the "any rational jury" test.

Nevertheless, appellant contends that the death of the decedent resulted not from his recklessness but from the "accidental" discharge of the firearm that followed appellant's tripping over the telephone cord. However, the fact that appellant may not have anticipated stumbling over the cord or bumping his elbow on the dresser does not necessarily alter his awareness of the risks. Nor does such involuntary conduct absolve appellant of responsibility for the resulting course of events. *Thomas*, 699 S.W.2d at 850; *see also George v. State*, 681 S.W.2d 43, 45, 46–47 (Tex.Crim.App.1984) (boys at play, defendant contended that gun discharged because his finger slipped; held, "an involuntary act does not necessarily render engaging in [a course of] conduct involuntary"). We overrule appellant's point of error and affirm the trial court's judgment.