Roberto PEREZ, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 13–03–469–CR.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Dec. 21, 2006.

Rehearing Overruled April 5, 2007.

Grant Jones, Corpus Christi, for appellant.

Roberto Perez, Jr., Huntsville, pro se.

Carlos Valdez, Nueces County Dist. Atty., Douglas K. Norman, Asst. Dist. County, for appellee.

Before Justices HINOJOSA, YAÑEZ, and BAIRD.[1]

## MEMORANDUM OPINION

Memorandum Opinion by Justice BAIRD.

Appellant was charged by indictment with the offense of murder. TEX. PEN.CODE ANN. § 19.02(b)(1),(2) (Vernon 2003).[2] The indictment alleged a prior felony conviction for the purpose of enhancing the range of punishment. A jury convicted appellant of the lesser included offense of manslaughter. See TEX. PEN.CODE ANN. § 19.04(a) (Vernon 2003). The trial judge found the enhancement allegation "true" and assessed punishment at confinement for life in the Texas Department of Criminal Justice—Institutional Division. Appellant raises two points of error. We affirm the trial court's judgment as reformed.

## I. Legal Sufficiency Challenge.

■ The first point of error challenges the sufficiency of the evidence to prove appellant acted recklessly. Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. Jackson v. Virginia, 443 U.S. 307, 315–16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Id. at 320, 99 S.Ct. 2781. The evidence is examined in the light most favorable to the factfinder. Id. A successful legal sufficiency challenge will result in the rendition of an acquittal by the reviewing court. Tibbs v. Florida, 457 U.S. 31, 41–42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

There is no dispute over the relevant facts in the instant case. When viewed in the light most favorable to the jury's verdict, the facts are: appellant and the decedent were engaged in a romantic relationship; the two had an argument in the bedroom of appellant's apartment; during the argument, appellant caused the decedent to fall on an empty glass aquarium which shattered; and, a shard of glass severed a vital artery, causing the decedent to bleed to death. Appellant contends these facts are insufficient to prove the culpable mental state of "recklessly."

■ A person commits manslaughter if he recklessly causes the death of an individual. TEX. PEN.CODE ANN. § 19.04(a). The offense of manslaughter "involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards it." Lewis v. State, 529 S.W.2d 550, 553 (Tex.Crim.App.1975); Todd v. State, 911 S.W.2d 807, 814–15 (Tex.App.-El Paso 1995, no pet.). Because manslaughter is a result-oriented offense, the definition of the culpable mental state is limited to the result of the conduct. Cook v. State, 884 S.W.2d 485, 491 (Tex.Crim.App.1994).

1. Former Texas Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. See TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

2. Under section 19.02(b) of the penal code:
A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual; and
(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.
TEX. PEN.CODE ANN. § 19.02(b) (Vernon 2003).

Therefore, the applicable definition with which we must deal in the instant case is:

> [A] person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances as viewed from the actor's standpoint.

TEX. PEN.CODE ANN. § 6.03(c) (Vernon 2003).

■ The culpable mental state is not the only legal theory that relates to the result of conduct. A person is criminally responsible if the result would not have occurred *but for* his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient. TEX. PEN.CODE ANN. § 6.04(a) (Vernon 2003). Two combinations may exist to satisfy the requisite causal connection between the defendant's conduct and the required result: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and a concurrent cause together may be sufficient to have caused the harm.[3] *Robbins v. State,* 717 S.W.2d 348, 351 (Tex.Crim.App.1986); *Umoja v. State,*

965 S.W.2d 3, 9 (Tex.App.-Fort Worth 1997, no pet.).

In the instant case, these two statutory provisions, sections 19.04 and 6.04 of the penal code, combine to formulate the question presented by appellant's sufficiency challenge: could any rational trier of fact have found that appellant was aware of the risk that the aquarium's glass would break if someone fell on it, that appellant consciously disregarded that risk and caused the decedent to fall on the aquarium, that the aquarium's glass broke, that the broken glass caused the injury which resulted in the decedent's death, and that her death would not have occurred but for appellant causing the decedent to fall on the aquarium?[4]

■ Proof of a culpable mental state almost always depends upon circumstantial evidence. *Lee v. State,* 21 S.W.3d 532, 539 (Tex.App.-Tyler 2000, pet. ref'd); *Morales v. State,* 828 S.W.2d 261, 263 (Tex.App.-Amarillo 1992), *aff'd,* 853 S.W.2d 583 (Tex.Crim.App.1993). Ordinarily, the culpable mental state must be inferred from the acts of the accused or the surrounding circumstances, which include not only acts, but words and conduct. *Lee,* 21 S.W.3d at 539; *Morales,* 828 S.W.2d at 263; *Ledesma v. State,* 677 S.W.2d 529, 531 (Tex.Crim.App.1984).

The evidence established that the decedent died in appellant's bedroom. The glass aquarium was on the floor in that room. The aquarium did not contain wa-

---

**3.** Of course the second combination is expressly limited by section 6.04(a); if the concurrent cause is clearly sufficient, by itself, to produce the result and the defendant's conduct, by itself, clearly insufficient, then the defendant is not criminally liable.

**4.** We are aware that the jury charge did not instruct the jury on causation under section 6.04, but the absence of such an instruction does not affect our analysis because the suffi-

ciency of the evidence is measured by the hypothetically correct jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). In *Adi v. State,* 94 S.W.3d 124, 130 (Tex.App.-Corpus Christi 2002, pet. ref'd), we reviewed the sufficiency of the evidence under the law of parties even though the trial judge had not submitted a parties charge to the jury.

ter but rather was empty except for a pair of suspenders and a pillow case, indicating the aquarium was being used as an impromptu storage bin. Accordingly, we find the evidence is sufficient to prove appellant was aware of the aquarium. We also find it logical to infer that appellant was aware that the aquarium was made of glass and that glass would break if someone fell on the aquarium.

The evidence further established that appellant caused the decedent to fall on the aquarium. This evidence was supplied by appellant's daughter who was in the appellant's apartment and overheard the argument between appellant and the decedent. The daughter testified that she awoke from her sleep on the sofa in the living room and heard "slaps" and name-calling from appellant's bed room. She also heard appellant say, "Get up, bitch, get up." From this testimony, a rational jury could find appellant caused the decedent to fall and that she fell on the aquarium. From this finding, we have the logical inference that appellant, by causing the decedent to fall on the aquarium, consciously disregarded the risk that the aquarium's glass would break.[5]

The medical testimony established that a shard of glass from the aquarium caused a stab wound above the anus. That shard of glass severed an artery that caused the decedent to bleed to death. From this testimony, a rational trier of fact could have found that the stab wound would not have occurred, but for appellant causing the decedent to fall on the aquarium.

Based upon these findings and the logical inferences from those findings, we hold the evidence is legally sufficient to prove appellant acted recklessly. The first point of error is overruled.

## II. Deadly Weapon Finding Challenge.

■ The second point of error contends the trial judge erred by making an affirmative finding that appellant used or exhibited a deadly weapon during the commission of the offense. The standard for resolving this point of error is the same as in the preceding point, namely whether any rational trier of fact could have found beyond a reasonable doubt, after viewing the evidence in a light most favorable to the prosecution, that a deadly weapon was used or exhibited. *Cates v. State,* 102 S.W.3d 735, 738 (Tex.Crim.App.2003) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). To hold evidence legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition; (2) the deadly weapon was used or exhibited during the transaction from which the felony conviction was obtained; and (3) that other people were put in actual danger. *Drichas v. State,* 175 S.W.3d 795, 798 (Tex.Crim.App.2005).

In the context of this case, a deadly weapon is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Pen.Code Ann. § 1.07(a)(17)(B) (Vernon Supp.2006). The word "capable" enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force. *Tisdale v. State,* 686 S.W.2d 110, 114–15 (Tex.Crim.App.1984) (op. on reh'g). There are two ways an object may be used as a deadly weapon under this statutory definition: (1) the actor actually used the object intending to cause death or serious

5. Dr. Rey Fernandez, testified the decedent was 5' 2" in height and weighed 172 pounds. We believe the physical characteristics of the decedent converted the "risk" that the glass would break to a near certainty if appellant caused the decedent to fall on the aquarium.

bodily injury; or, (2) the actor threatens to use an object in such a way that if the threat were carried out the object would be capable of causing death or serious bodily injury. *McCain v. State,* 22 S.W.3d 497, 503 (Tex.Crim.App.2000).

The object in question is an aquarium. An aquarium is defined as "a tank, usually with glass sides, or a pool, bowl, etc., for keeping live water animals or water plants." *Webster's New World Dictionary* 69 (2d ed. 1986). We can easily see that an aquarium could be used as a deadly weapon. For example, a defendant who held the victim's head under the aquarium's water until he drowned would use a deadly weapon. However, in the instant case, the aquarium was incapable of fulfilling its intended use. The aquarium's owner, Martha Guerra, appellant's former girlfriend, testified a crack prevented the aquarium from holding water. Accordingly, the aquarium was on the floor in appellant's bedroom being used as a storage bin. There is no evidence to support a finding that appellant actually used the aquarium intending to cause death or serious bodily injury.[6] Consequently, the evidence is insufficient to meet the first statutory definition of deadly weapon.

The next question is whether appellant threatened to use the aquarium in such a way that, if the threat had been carried out, the aquarium would have been capable of causing death or serious bodily injury. Again, we have no difficulty in believing there are ways an aquarium could be used to threaten death or serious bodily injury. For example, holding an aquarium over another's head and threatening to drop it could warrant a deadly weapon finding. But, there is no evidence appellant used the aquarium in any way to threaten the decedent. At all relevant times prior to the decedent falling and shattering the aquarium's glass, the aquarium was a benign storage bin on the floor next to the bedroom wall. Since appellant did not threaten to use the aquarium in such a way that, if the threat had been carried out, the aquarium would have been capable of causing death or serious bodily injury, the evidence is insufficient to meet the second statutory definition of deadly weapon.

Having found appellant did not *use* the aquarium as a deadly weapon, we turn to the final question: did appellant *exhibit* a deadly weapon. As noted above, the aquarium does not meet the statutory definition as required. Furthermore, the Court of Criminal Appeals has held that " 'exhibited a deadly weapon' means that the weapon was consciously shown or displayed during the commission of the offense." *Patterson v. State,* 769 S.W.2d 938, 941 (Tex.Crim.App.1989). There is no evidence that appellant consciously showed or displayed the aquarium during the commission of the instant offense.

Having found the evidence insufficient to prove appellant either used or exhibited the aquarium as a deadly weapon, the second point of error is sustained. We reform the trial court's judgment to delete the deadly weapon finding.

The judgment of the trial court is affirmed as reformed.

---

6. As noted earlier, the jury acquitted appellant of intentionally or knowingly causing the decedent's death or intending to cause serious bodily injury and committing an act clearly dangerous to human life. *See,* footnote 2, *supra.*