Affirmed as Reformed and Memorandum Opinion filed September 2, 2008








Affirmed as Reformed and Memorandum Opinion filed September 2,
2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00142-CR

____________

 

TOMMY GALINDO RODRIGUEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 178th
District Court 

Harris County, Texas

Trial Court Cause No. 1073193

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Tommy Galindo Rodriguez, was indicted on the
offense of first-degree murder.  The jury convicted him of the lesser-included
offense of manslaughter, and the trial court sentenced him to life imprisonment
in the Texas Department of Criminal Justice, Institutional Division, and a
$10,000 fine.  In five issues, appellant challenges the legal and factual
sufficiency of the evidence supporting the verdict, as well as alleged
evidentiary errors committed by the trial court.  Appellant also argues, and the
State concedes, that the trial court erred in entering a second enhancement
finding in the judgment.  We reform the judgment, and affirm.








Factual
and Procedural Background

On the evening of November 12, 2005, appellant and his
girlfriend, Sallie Millan, went to a party hosted by the parents of Maria
Melchor.  They were accompanied by the complainant, John Melchor,[1]
and one of Sallie=s children.  Maria testified that
appellant, Sallie, and the complainant were all drinking alcohol at the party.

Sometime during the party, Jose Sarmiento, Maria=s cousin,
approached Sallie and asked her whether she remembered him.  According to
Maria, when Sallie answered Ayes,@ appellant became Ajealous@ and Aupset.@  He raised his
voice and asked Sallie how she knew Sarmiento.  When Sallie responded that she
knew him because she had seen him before, and that he was Maria=s cousin,
appellant pushed Sallie.  This angered the complainant.

The complainant then pushed appellant, who fell to the
ground.  Maria testified that appellant then Agot very upset,@ stood up, and
pulled a Adagger@[2] out of his right
pocket.  Appellant lunged toward the complainant with the dagger and tried to
stab him.  Appellant also tried to stab Sarmiento and Maria=s uncle, Ruben
Flores, as well as another of Maria=s cousins, Ruben
Flores, Jr.[3] 
George then attempted to restrain the complainant, who at this point had
retrieved a long fork from the nearby barbeque pit.[4] 
George was able to wrest the fork from the complainant, while Maria and other
family members tried to calm appellant.  Eventually, Sarmiento disarmed
appellant and gave the dagger to Maria.  Maria then handed the dagger to her
mother, who hid it in the dirt underneath some nearby plants.








Appellant, Sallie, and the complainant continued arguing,
and finally decided to leave the party.  Sallie requested the dagger from
Maria, who initially refused to return it.  Maria testified that she eventually
gave the dagger to Sallie, who then hid it between the door and the front seat
on the driver=s side of her car.  Appellant, Sallie, her son, and
the complainant then got into Sallie=s car and left the
party.

The four drove to the complainant=s house.  Sallie
testified that appellant, who was in the back seat of the car, kept repeating, AYou just wait. You
just wait,@ which she interpreted as a threat.  When they
arrived, the complainant ordered appellant out of the car, telling him to walk
home.  The complainant also told appellant not to go to Sallie=s apartment. 
Appellant then walked off, and the complainant informed Sallie that he would
accompany her to her apartment because he didn=t Awant [appellant]
going over there and probably beat[ing] [her] up.@ Sallie, her son,
and the complainant then drove to Sallie=s apartment.  

When they arrived, Sallie=s daughter Jasmine
informed her that appellant had called to tell Sallie he was coming over. 
Appellant then called a second time, apologized for his behavior, and asked
Sallie to pick him up.  She told him that she would and left her apartment to
attempt to locate him.  When she was unable to do so, she returned home. 
Appellant then called a third time.  Sallie testified that appellant was Aangry@ and Aupset.@  Accusing her of
lying about attempting to pick him up, he told her that he was coming over. 
Sallie specifically told appellant not to come over, then hung up on him.

Approximately thirty minutes later, appellant arrived at
Sallie=s apartment and
knocked on the door.  Sallie testified that the complainant was seated at a
table adjacent to the kitchen area.  She also testified that she had placed the
dagger behind the radio on the table where the complainant was seated, but that
the complainant was unaware the dagger was there.  Appellant again apologized
for his behavior and promised her that he would remain calm and Abehave@ if she let him
in.  Sallie eventually decided to allow appellant to enter the apartment.








As she unlocked the door, appellant shoved the door open
and Awent straight to
the kitchen.@  Sallie testified that she could hear appellant
opening and searching through the kitchen drawers.  Jasmine, who was seated on
the sofa in the living room, then exclaimed, AMommy, [appellant]
has a knife. [Appellant] has a knife.@

The complainant then stood up and walked toward the
kitchen.  Sallie told Jasmine to go next door and call the police.[5] 
Sallie then grabbed the dagger, handed it to the complainant, and followed
behind him.  Sallie testified that the complainant held the dagger to his side,
behind his right leg, with the blade pointed toward the floor.  Appellant, who
had obtained a butcher knife from one of the kitchen drawers, pointed the knife
at the complainant, who repeatedly asked appellant to put it down.  Appellant
began walking toward the complainant with the knife still pointed at him.  The
complainant raised the dagger from behind his leg, while Sallie repeatedly told
appellant to put the knife down.

Sallie testified that things then Ahappened real
fast.@  Appellant and
the complainant Awere fighting,@ and at one point
both were Abent over with the knife.@  By this time,
the complainant had dropped the dagger, and was holding appellant=s hand Atrying to keep
[appellant] from stabbing him@ with the knife.  The complainant then
called for Sallie, who jumped in between the two.  Sallie Asaw blood,@ but she did not
see the knife go into the complainant and did not know that he had been stabbed
in his Astomach.@[6]  Sallie
exclaimed, AYou stabbed my brother,@ at which time
appellant and the complainant let go of the knife.








The complainant fell back against the wall and onto the
kitchen floor, unable to get up.  The complainant, who was bleeding, requested
an ambulance.  Sallie testified that appellant Awalk[ed] real slow@ out of the
kitchen and toward the front door of the apartment.  Jasmine, who by this time
had returned from the neighbor=s apartment and was standing in the
doorway, exclaimed, AMom, [appellant] is trying to leave.@  Thinking
appellant was trying to flee the scene, Sallie knocked appellant down, telling
him AYou=re not going
anywhere.@  Sallie then called for an ambulance.

Police and paramedics eventually arrived at the scene. 
Officers Kelly Berg and Danel Sanchez of the Houston Police Department were the
first to respond.  Each testified that Sallie answered the door with the knife
and the dagger in her hands.  Appellant was seated on the kitchen floor, with
the complainant=s head in his lap.  The kitchen floor was
covered in blood.  Officers Berg and Sanchez asked who had the stabbed the
complainant, and appellant responded, AI did.@  Officer Sanchez
then handcuffed appellant and seated him on the sofa in the living room.

Sallie was then transported to LBJ Hospital.  While
awaiting treatment for her injuries, Sallie gave an initial statement to
Officer Sanchez.[7] 
Appellant and the complainant were taken to Ben Taub Hospital,[8]
where the complainant later died from his injuries.

Appellant was subsequently indicted on the offense of
first-degree murder.  The jury convicted him of the lesser-included offense of
manslaughter, and the trial court sentenced him to life imprisonment in the
Texas Department of Criminal Justice, Institutional Division, and a $10,000
fine.  This appeal followed.

Issues
on Appeal








In five issues, appellant challenges various aspects of his
conviction.  In his first and second issues, appellant contends that the
evidence is legally and factually insufficient to prove that, at the time of
the alleged offense, he had the mens rea required for manslaughter,
specifically, that he acted recklessly.  In his third and fourth issues,
appellant contends that the trial court abused its discretion in (1) excluding
testimony from Lina Hernandez; and (2) admitting testimony from Officer Sanchez
regarding the reliability of Sallie=s initial
statement to police investigators.  In his final issue, appellant argues that
the judgment should be reformed to delete that there was a plea or a finding on
a second enhancement paragraph.  We analyze each of appellant=s issues in the
order he has presented them.

Analysis
of Appellant=s Issues

I.        The
Evidence is Legally and Factually Sufficient to Prove that Appellant Recklessly
Caused the Death of the Complainant.

In his first and second issues, appellant challenges the
sufficiency of the evidence supporting his conviction for manslaughter. 
Appellant specifically contends that the evidence is legally and factually
insufficient to prove that he recklessly caused the death of the complainant.

A.      Standards
of Review and Applicable Law








When reviewing challenges to both the legal and factual
sufficiency of the evidence supporting the verdict, we first review the legal
sufficiency challenge. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.
Crim. App. 1996).  In reviewing the legal sufficiency of the evidence, we look
at the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S.
307, 319 (1979); Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App.
2002).  This standard of review applies to cases involving both direct and
circumstantial evidence. King v. State, 895 S.W.2d 701, 703 (Tex. Crim.
App. 1995).  Although we consider all evidence presented at trial, we may not
re-weigh the evidence and substitute our judgment for that of the jury. King
v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  The jury is the
exclusive judge of the credibility of witnesses and of the weight to be given
their testimony, and it is the exclusive province of the jury to reconcile
conflicts in the evidence. Mosley v. State, 983 S.W.2d 249, 254 (Tex.
Crim. App. 1998).

In reviewing the factual sufficiency of the evidence, we
view all of the evidence in a neutral light. See Cain v. State, 958
S.W.2d 404, 408 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d at 134.  We
may set the verdict aside if (1) the evidence is so weak that the verdict is
clearly wrong and manifestly unjust; or (2) the verdict is against the great
weight and preponderance of the evidence. Watson v. State, 204 S.W.3d
404, 414B15 (Tex. Crim.
App. 2006) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000)).  While we may disagree with the jury=s conclusions, we
must exercise appropriate deference to avoid substituting our judgment for that
of the jury, particularly in matters of credibility. Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005); see also Watson, 204 S.W.3d
at 414 (stating that an appellate court should not reverse a verdict it
disagrees with unless it represents a manifest injustice, though supported by
legally sufficient evidence).

A person commits the offense of manslaughter if he
recklessly causes the death of an individual. Tex.
Penal Code _ 19.04(a).  Because manslaughter is a result-oriented
offense, the definition of the culpable mental state is limited to the result
of the conduct. See Schroeder v. State, 123 S.W.3d 398, 400 (Tex. Crim.
App. 2003); Perez v. State, 216 S.W.3d 855, 857 (Tex. App.CCorpus Christi
2006, pet. ref=d).  A person acts recklessly with respect to the
result of his conduct when he is aware of, but consciously disregards, a
substantial and unjustifiable risk that the result will occur. Tex. Penal Code _ 6.03(c).  The
risk must be of such a nature and degree that its disregard constitutes a gross
deviation from the standard of care that an ordinary person would exercise
under all the circumstances as viewed from the actor=s standpoint. Id.








B.      Application
of Law to the Facts

The gist of appellant=s legal and
factual sufficiency challenges involves whether the evidence supports the jury=s finding of
recklessness, the level of intent required to support a manslaughter
conviction.  Proof of a culpable mental state generally relies on
circumstantial evidence. Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim.
App. [Panel Op.] 1978).  Whether an individual is aware of a requisite risk, as
well as whether he consciously disregarded that risk, are  conclusions to be
drawn through inference from all the circumstances by the trier of fact. See
id.; Sadler v. State, 728 S.W.2d 829, 831 (Tex. App.CDallas 1987, no
pet.).  Therefore, the issue is whether, given all the circumstances, a
rational trier of fact could infer that appellant was aware of, but consciously
disregarded, the risk created by his conduct. See Sadler, 728 S.W.2d at
831; Dillon, 574 S.W.2d at 94; see also Gahagan v. State, 242
S.W.3d 80, 86 (Tex. App.CHouston [1st Dist.] 2007, pet. filed). 
With this in mind, we proceed to appellant=s specific
arguments.

1.       Legal
Sufficiency

In support of his legal sufficiency challenge, appellant
contends that there is no evidence showing Athe risk
disregarded, even if perceived, was unjustifiable under the circumstances.@  Thus, appellant=s challenge is
focused on the definition of recklessness contained in the Texas Penal Code. See
Tex. Penal Code _ 6.03(c) (stating
that a person acts recklessly with respect to the result of his conduct when he
is aware of, but consciously disregards, a substantial and unjustifiable risk
that the result will occur) (emphasis added).  He asserts that the evidenceCeven when viewed
in the light most favorable to the verdictCmerely shows that
the complainant Awas stabbed during a struggle over one or
both knives.@  He argues that the evidence is therefore legally
insufficient to prove that, at the time of the alleged offense, he had the mens
rea required for manslaughter.








In contrast, the State contends that the evidence is
legally sufficient to prove that appellant had the culpable mental state of
recklessness required for a manslaughter conviction.  The State asserts that
the evidence, viewed in the light most favorable to the verdict, demonstrates
that appellant (1) was drinking alcohol the night of the complainant=s death and showed
signs of intoxication; (2) carried a dagger to the party hosted by Maria=s parents; (3)
pulled out and waived the dagger at the complainant and at least two others at
the party; (4) started a physical fight with the complainant at Sallie=s apartment while
utilizing a knife; (5) during the fight, utilized the knife in the same manner
as he had the dagger earlier in the evening; and (6) pushed the knife into the
complainant=s stomach during the fight.  The State argues that a
rational trier of fact could infer from these circumstances that appellant was
aware ofCbut consciously
disregardedCthe Asubstantial and unjustifiable risk that
complainant would be injured or killed,@ and that the
evidence is therefore legally sufficient to prove that appellant recklessly
caused the death of the complainant.  We agree with the State.








In the light most favorable to the verdict, the evidence
supports the jury=s finding that, at the time of the alleged
offense, appellant had the culpable mental state of recklessness required for a
manslaughter conviction.  In this light, the evidence demonstrates that (1)
appellant armed himself with a butcher knife taken from Sallie=s kitchen; (2) the
complainant was unarmed when appellant armed himself with the butcher knife;
(3) appellant pointed the butcher knife at the complainant in a threatening
manner and walked toward him; (4) both Sallie and the complainant repeatedly
asked appellant to put down the butcher knife; (5) appellant refused these
repeated requests and was holding the butcher knife when he began fighting with
the complainant; (6) appellant was Aswinging@ the butcher knife
at the complainant; (7) appellant struggled with the complainant over control
of the butcher knife; and (8) appellant pushed the butcher knife into the
complainant=s midsection during the struggle.  This evidence is
legally sufficient to prove that appellant was aware of, but consciously
disregarded, a substantial and unjustifiable risk that the complainant would be
stabbed and killed during a physical altercation involving the butcher knife. See
Sadler, 728 S.W.2d at 831 (evidence legally sufficient to prove that
appellant was aware of, but consciously disregarded, risk of injury or death
involved in struggle over pistol; evidence indicated that both appellant and
complainant attempted to gain possession of pistol, which accidentally
discharged during struggle); see also Tejeda v. State, No.
08-02-00451-CR, 2004 WL 2252108, at *8 (Tex. App.CEl Paso Oct. 7,
2004, no pet.) (not designated for publication) (evidence legally sufficient to
prove that appellant was aware of risk of stabbing involved in wielding knife
during fight; evidence showed that appellant was holding knife when fight with
complainant began, appellant switched hands and began swinging with both hands
during fight, and appellant admitted hitting several people during fight Abut did not know
if he stabbed them@); Harrison v. State, No.
07-01-0422-CR, 2002 WL 31730720, at *2B3 (Tex. App.CAmarillo Dec. 3,
2002, no pet.) (per curiam) (not designated for publication) (evidence was
legally and factually sufficient to prove that appellant was aware of, but
consciously disregarded, risk associated with use of knife; evidence indicated
that appellant and complainant got into a physical altercation, appellant
picked up the knife Ato scare@ complainant, and
complainant was stabbed during the physical altercation).  Contrary to
appellant=s contention, under the facts of this case, it is of
no consequence that the complainant was stabbed and killed during a struggle
for control over the butcher knife, as appellant himself initiated the
altercation.








Moreover, testimony at trial also indicated that appellant
wielded the dagger in a threatening manner hours earlier at the party, where he
tried to stab the complainant and three members of Maria=s family.  This
constitutes some evidence that appellant was aware ofCbut consciously
disregardedCthe risk that the complainant might be stabbed or
killed during a physical altercation involving the butcher knife. See Hayes
v. State, 728 S.W.2d 804, 809B10 (Tex. Crim.
App. 1987) (op. on reh=g) (evidence that appellant involved
himself in a physical struggle with complainant, brandished a gun to intimidate
complainant and protect himself, and the gun discharged during further struggle
demonstrated appellant was aware of but consciously disregarded risk created by
his conduct); Mendieta v. State, 706 S.W.2d 651, 653 (Tex. Crim. App.
1986) (evidence that appellant pulled out knife and began swinging it to keep
complainant away from him showed appellant was aware of risk created by his
conduct); Bergeron v. State, 981 S.W.2d 748, 752B53 (Tex. App.CHouston [1st
Dist.] 1998, pet. ref=d) (evidence that appellant merely tried
to ward off complainant when he drew knife and stabbed complainant did not
indicate appellant failed to perceive risk complainant might be seriously
injured or killed as a result of appellant=s use of the knife).

Finally, appellant points to inconsistencies in Sallie=s and Jasmine=s testimony
regarding whether the complainant answered the door at Sallie=s apartment, as
well as whether the complainant was armed with the dagger when appellant
entered the apartment.  The jury, as the exclusive judge of the credibility of
witnesses and of the weight to be given their testimony, was entitled to
believe some or all of any witness=s testimony, and
reconcile any conflicts in the evidence. See Mosley, 983 S.W.2d at 254; see
also Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).

Viewed in the appropriate light, the evidence is legally
sufficient to support the inference that appellant was aware of, but
consciously disregarded, the substantial and unjustifiable risk created by his
conduct.  Therefore, the evidence is legally sufficient to prove that, at the
time of the alleged offense, appellant had the culpable mental state of
recklessness required for a manslaughter conviction.  We overrule appellant=s first issue.

2.       Factual
Sufficiency








In support of his factual sufficiency challenge, appellant
again focuses on whether the risk created by his conduct was justifiable under
the circumstances.  He specifically points to statements given by Sallie and
Jasmine to police investigators, in which each stated that the complainant
answered the door at Sallie=s apartment while armed with the dagger. 
He asserts that this evidenceCwhich he alleges is inconsistent with
their trial testimonyCcreated an issue regarding Awhether the risk
taken by appellant was justifiable under the circumstances, or whether a
reasonable doubt existed as to whether the risk was unjustified.@  He argues that
the evidence is therefore factually insufficient to prove that he recklessly
caused the death of the complainant.

Conversely, the State contends that the evidence is
factually sufficient to prove that appellant recklessly caused the death of the
complainant.  The State asserts that it was the jury=s task at trial to
review the credibility of all the witnesses and determine the weight to be
given their testimony.  The State argues that a reasonable jury could have
chosen to disbelieve any inconsistent descriptions of the event and credit the
circumstantial evidence surrounding the incident and appellant=s own statement to
police.  The State concludes that the evidence supporting the verdict is not so
weak to support a finding of guilt, nor is the verdict against the great weight
and preponderance of the evidence.  Again, we agree with the State.

Viewing all of the evidence in a neutral light, we conclude
that the evidence is factually sufficient to prove that appellant was aware of,
but consciously disregarded, the substantial and unjustifiable risk that the
complainant might be stabbed or killed during a physical altercation involving
the knife.  The evidence is not so weak that the verdict is clearly wrong and
manifestly unjust, and the verdict is not against the great weight and
preponderance of the evidence. Watson, 204 S.W.3d at 414B15.  Both Sallie
and Jasmine testified at trial that Sallie answered the door at her apartment,
that the complainant was seated when Sallie answered the door, and that the
complainant was unarmed when appellant entered the apartment.  Both explained
the reasons for the inconsistencies between their trial testimony and their
statements to police investigators, and these explanations were corroborated by
the testimony of the police officers who took their statements.[9]








Finally, we are mindful that we must exercise appropriate
deference to the jury=s credibility determinations in order to
avoid substituting our judgment for theirs. See Drichas, 175 S.W.3d at
799; Watson, 204 S.W.3d at 414.  The jury was free to believe or
disbelieve any or all of Sallie=s and Jasmine=s trial testimony,
even though some of it may have been inconsistent with their statements to
police investigators. See Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986) (stating that the jury, as the judge of the credibility of the
witnesses, may choose believe any portion of a witness=s testimony, even
though her testimony may be contradicted by other evidence); Dorsey v. State,
24 S.W.3d 921, 924 (Tex. App.CBeaumont 2000, no pet.) (citing standard
in context of factual sufficiency review).

Therefore, we hold that the evidence is factually
sufficient to prove that, at the time of the alleged offense, appellant had the
culpable mental state of recklessness required for a manslaughter conviction. 
We overrule appellant=s second issue.

II.       The
Trial Court Did Not Abuse its Discretion in Excluding and Admitting Certain
Testimony.

In his third and fourth issues, appellant contends that the
trial court abused its discretion in (1) excluding allegedly non-hearsay
testimony from Lina Hernandez; and (2) admitting testimony from Officer Sanchez
regarding the reliability of Sallie=s initial
statement to police investigators.  We examine each of appellant=s arguments in
turn. 

A.      Standard
of Review








We review a trial court=s evidentiary
rulings under an abuse of discretion standard. Martin v. State, 173
S.W.3d 463, 467 (Tex. Crim. App. 2005).  A trial court abuses its discretion
when it acts arbitrarily or unreasonably, or when it fails to analyze or apply
the law correctly. See Manning v. State, 114 S.W.3d 922, 926 (Tex. Crim.
App. 2003); Mays v. State, 223 S.W.3d 651, 655 (Tex. App.CTexarkana 2007,
pet. granted) (citing State v. Kurtz, 152 S.W.3d 72, 81 (Tex. Crim. App.
2004) (Holcomb, J., dissenting)).  

B.      The Trial
Court=s Exclusion of Allegedly Non-Hearsay
Testimony From Lina Hernandez Was Harmless.

Appellant first contends that the trial court abused its
discretion when it prevented Lina Hernandez from testifying regarding a
statement that she overheard on the telephone the night of the complainant=s death.  Appellant
asserts that his statementCACall the police.
Call an ambulance.@Cwhich he alleges
Lina heard him screaming while she was on the telephone with Jasmine, was not
hearsay because it was not offered to prove the truth of the matter asserted. 
Rather, appellant argues that this statement was offered to show that it was
made, and was relevant because Ait showed [he] lacked any criminal intent
or sense of guilt for his actions.@  Appellant argues
that the trial court therefore abused its discretion when it excluded this
testimony on hearsay grounds.

In the present case, we need not decide whether the trial
court=s exclusion of
Lina=s testimony on
hearsay grounds was error because we conclude the error, if any, in excluding
her testimony was harmless.  Therefore, for purposes of analysis, we will
assume error and address appellant=s contention that
the error was harmful.

1.       Applicable
Law








The erroneous exclusion of a defendant=s evidence
generally constitutes non-constitutional error unless the excluded Aevidence forms
such a vital portion of the case that exclusion effectively precludes the
defendant from presenting a defense.@ Potier v.
State, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002).  Here, the evidence
excludedCtestimony
regarding appellant=s statement to ACall the police.
Call an ambulance.@Cdid not prevent
appellant Afrom presenting the substance of his defense to the
jury.@ See id. at
666.  We therefore apply the harmless error standard of Rule 44.2(b) of the
Texas Rules of Appellate Procedure. See id. at 662.

Rule 44.2(b) provides that any non-constitutional error
which does not affect substantial rights must be disregarded. See Tex. R. App. P. 44.2(b).  Substantial
rights are not affected by the erroneous exclusion of evidence Aif the appellate
court, after examining the record as a whole, has fair assurance that the error
did not influence the jury, or had but a slight effect.@ Motilla v.
State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  However, if we harbor Agrave doubts@ that an error did
not affect the outcome, we must treat the error as if it did. See Webb v.
State, 36 S.W.3d 164, 182 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).

In assessing the likelihood that the jury=s decision was
adversely affected by the error, we consider everything in the record,
including any testimony or physical evidence admitted for the jury=s consideration,
the nature of the evidence supporting the verdict, and the character of the
alleged error and how it might be considered in connection with other evidence
in the case. Motilla, 78 S.W.3d at 355.  Neither party has the burden to
prove harm from an error. Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim.
App. 2001).  It is the duty of the reviewing court to assess harm from the
context of the error. Id.

2.       Application
of Law to the Facts

Appellant contends that the erroneously-excluded testimony Ashowed appellant
lacked any criminal intent or sense of guilt for his actions.@  Thus, appellant=s argument is
focused on the mens rea element of the offense.  Stated differently, appellant
argues that, had testimony of his statement been admitted, it would have proved
that he did not recklessly cause the death of the complainant.  We disagree.








As the Texas Court of Criminal Appeals has explained, one
factor to consider in our analysis is Athe character of
the alleged error and how it might be considered in connection with other
evidence in the case.@ Motilla, 78 S.W.3d at 355. 
Testimony regarding appellant=s request to call the police and/or an
ambulanceCwhich he made after he had stabbed the
complainantCdoes not demonstrate that appellant did not act recklessly
at the time the complainant was stabbed.  In fact, this testimony bears no
relationship to appellant=s state of mind during his commission of
the offense.  At most, it is probative of appellant=s state of mind
immediately following the incident, and not, as he contends, Arelevant to
appellant=s state of mind at the time of the incident.@

When considered in connection with the evidence that was
presented to the jury of appellant=s state of mind at
the time of the offense, the trial court=s alleged error in
excluding Lina=s testimony was harmless.  At trial, Sallie testified
that appellant walked straight to the kitchen when he entered the apartment,
that appellant obtained a butcher knife from one of the kitchen drawers, that
appellant walked toward the complainant while pointing the knife at him, that a
fight started between appellant and the complainant, that appellant struggled
with the complainant over control of the knife, and that appellant pushed the
knife into the complainant=s stomach during the struggle.  Other
testimony indicated that appellant carried a dagger to the party hosted by
Maria=s parents, where
he tried to stab the complainant and three members of Maria=s family. 
Furthermore, appellant admitted in his statement to Officer Parker that the
complainant was unarmed (1) at the time appellant armed himself with the
butcher knife from Sallie=s kitchen; (2) when appellant began
fighting with the complainant while utilizing the butcher knife; and (3) when
appellant was Aswinging@ the butcher knife
at the complainant.  This evidence was probative of appellant=s state of mind at
the time of the offense. See Sadler, 728 S.W.2d at 831; Dillon,
574 S.W.2d at 94; Gahagan, 242 S.W.3d at 86.








Therefore, after considering the record in this case, we
cannot say that the trial court=s error, if any, in excluding Lina=s testimony had a
substantial and injurious effect or influence on the jury=s verdict. See
Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).  We have a
fair assurance that exclusion of her testimony Adid not influence
the jury, or had but a slight effect,@ and we do not
harbor Agrave doubts@ that this
exclusion affected the outcome of this case. See Motilla, 78 S.W.3d at
355; Webb, 36 S.W.3d at 182.  We overrule appellant=s third issue.

C.      Appellant
Waived Any Error in the Trial Court=s Admission of
Testimony From Officer Sanchez.

Appellant next contends that the trial court erred in
admitting testimony from Officer Sanchez regarding the reliability of Sallie=s initial
statement.  Appellant asserts that Officer Sanchez=s expert opinionCthat, based on her
training and experience as a police officer, the statement given by Sallie at
LBJ Hospital was Aunreliable@Cconstituted Aa direct opinion
as to the truthfulness of [Sallie].@  Appellant
further asserts that he was entitled to have the jury decide Awhich version of
the facts given by Sallie was truthful or credible@ and argues that,
because Officer Sanchez=s opinion decided an issue for the jury
rather than assisted them with understanding the evidence or determining a fact
in issue, this testimony is inadmissible under Rule 702 of the Texas Rules of
Evidence.

On direct examination, the State elicited testimony from
Officer Sanchez regarding the initial statement given by Sallie at LBJ
Hospital.  Officer Sanchez explained that Sallie=s statement was
taken while Sallie was awaiting treatment for her injuries, approximately one
and one-half hours after the incident at her apartment.  In sum, Officer
Sanchez testified that, at the time her initial statement was given, Sallie
appeared to be (1) Avery upset@; (2) Avery worried about
the condition of [the complainant]@; (3) intoxicated;
(4) unable to focus on the questions being asked; and (5) Aconfused.@  She further
explained that Sallie did not appear to be Alucid@ at that time,
because she would respond to her questions with questions about the complainant=s condition and
gave several inconsistent answers to the questions that were asked.

The following exchange then occurred:

[The State]:            Okay.  So
did you believe that a follow-up statement should be taken by other people at a
later time?

[Officer Sanchez]:  Absolutely.








[The State]:            Why?

[Officer Sanchez]:  I believe that
she was too concerned with the condition of her brother at that time and in an
intoxicated state and injured and I just felt like it probably wasn=t the best time to get a full
statement from [Sallie].

*  *  *

[The State]:            Now, let me
ask you this:  Based on your training and experience I think you have said that
sometimes it=s beneficial to talk to somebody
when they=re more lucid and not intoxicated?

[Officer Sanchez]:  Correct.

*  *  *

[The State]:            Okay. 
Based on your dealing with her and based on your training and experience as a
police officer, do you think that her statement to you in LBJ is reliable?

[Defense Counsel]: Judge, I=m going to object to that.  It
calls for speculation and also invades the province of the jury.

[The Court]:           Overruled. 
I=m going to let her give an opinion
as toCshe=s already testified to the condition of the woman
and if she can say reliable, unreliable based on her training as a police
officer I=m going to let her do that.

[Officer Sanchez]:  Unreliable.

[The State]:            Thank
you.  I will pass the witness.

Defense
counsel then cross-examined Officer Sanchez regarding her opinion that the
information contained in Sallie=s initial statement was unreliable.

Later, on redirect examination, the State again asked
Officer Sanchez regarding the reliability of Sallie=s initial
statement:

[The State]:            Okay.  So I=m asking you to tell this jury
under oath, do you believe based on your training and experience that her
statement to you was reliable about what happened in that apartment that night?

[Officer Sanchez]:  I
believe that it was unreliable.








Defense
counsel did not renew his objection.  Nor did he request a running or
continuing objection to any of the questions asked of Officer Sanchez regarding
the reliability of Sallie=s initial statement.

Because defense counsel failed to renew his objection to
Officer Sanchez=s testimony, any error in its admission
was not preserved. See Salazar v. State, 127 S.W.3d 355, 362 (Tex. App.CHouston [14th
Dist.] 2004, pet. ref=d) (holding failure to renew objection
when prosecutor asked substantially similar question waived any error); see
also Williams v. State, 840 S.W.2d 449, 461B62 (Tex. App.CTyler 1991, pet.
ref=d) (same); Johnson
v. State, 975 S.W.2d 644, 653B54 (Tex. App.CEl Paso 1998, pet.
ref=d) (same); Short
v. State, 681 S.W.2d 652, 655 (Tex. App.CHouston [14th
Dist.] 1984, pet. ref=d) (same).  We therefore overrule
appellant=s fourth issue.

III.      The
Judgment Should Be Reformed to Delete That There was a Plea or a Finding on a
Second Enhancement Paragraph.

In his final issue, appellant arguesCand the State
concedesCthat the judgment
should be reformed to delete the recitation that there was a plea or a finding
on a second enhancement paragraph.

During punishment, the State presented appellant with the
remainder of the indictment.  The State alleged that appellant had previously
been convicted of the felony offense of burglary of a habitation.  Appellant
pled ATrue@ to the
enhancement paragraph in the indictment, and the jury also found it ATrue.@  However, the
judgment reflects that appellant pled ATrue@ to a second
enhancement paragraph and that the jury found this second enhancement paragraph
to be ATrue.@  Appellant and
the State agree that the indictment did not contain a second enhancement
paragraph, that appellant did not plead ATrue@ to a second
enhancement paragraph, and that the jury did not find the second enhancement
paragraph to be ATrue.@








The proper remedy for this error is reformation of the
judgment. See Ingram v. State, C S.W.3d C , 2008 WL
2440196, at *4 (Tex. App.CTyler June 18, 2008, no pet. h.); see
also Asberry v. State, 813 S.W.2d 526, 529 (Tex. App.CDallas 1991, pet.
ref=d).  We therefore
sustain appellant=s final issue and reform the judgment to
reflect that the indictment contained only one enhancement paragraph, that
appellant pled ATrue@ to this
enhancement paragraph, and that the jury found this enhancement paragraph to be
ATrue.@

Conclusion

For the foregoing reasons, we
reform the trial court=s judgment to delete the plea of ATrue@ and the finding of ATrue@ on the second enhancement paragraph.  We affirm the trial court=s judgment as reformed.

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed September 2, 2008.

Panel consists of
Chief Justice Hedges, Justice Boyce, and Senior Justice Price.*

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 

 

 

 

 

 

_____________________________

* Senior Justice Frank C. Price sitting by
assignment.









[1]  Maria testified that George Melchor is her husband,
and that George, Sallie, and the complainant are all siblings.





[2]  Other testimony at trial described this weapon as a ARambo knife@
with a serrated edge.  For ease of understanding and internal consistency, we
refer to this weapon as Athe dagger.@





[3]  Sallie testified that appellant Awas pointing the dagger at everybody@ because Aeverybody
was surrounding him.@  When asked to clarify at whom appellant pointed the
dagger, Sallie responded AMaria=s family@ and the complainant.





[4]  Maria testified that the fork was approximately
fourteen inches in length, had two prongs, and was of the type used to Aturn@ or Aflip@ barbeque.





[5]  Jasmine testified that, at that point, she went next door and waited
there until her neighbor called the police.





[6]  According to the testimony of the medical examiner,
the complainant was stabbed in his chest and in his right flank and had
multiple incised wounds to his upper extremities.  The stab wound to the complainant=s chest penetrated his liver, while
the stab wound to his right flank penetrated his kidney.  In addition, Sallie
testified that she was stabbed in her left hand, her right hip, and her right
leg during the fight.





[7]  Officer Sanchez testified that this statement was taken at
approximately 2:30 a.m., within one and one-half hours of the incident at the
apartment.  Officer Sanchez also
testified that she interviewed Jasmine at the scene, immediately after the
incident.  In addition, Officer
John Parker of the Houston Police Department testified that he interviewed Sallie and Jasmine the following afternoon.





[8] Before being released from Ben Taub Hospital,
appellant was questioned by Officer Parker.  Officer Parker testified that he
also interviewed appellant a second time and that the second interview was
recorded on videotape.





[9]  Specifically, Sallie testified that she was not listening to Officer
Sanchez=s questions very well when she gave
her initial statement at LBJ Hospital and that she was crying while she was
being questioned.  Officer Sanchez
testified that Sallie
was awaiting treatment for her injuries at the time her initial statement was
taken, that Sallie was Avery upset@ and Avery worried about the condition of [the
complainant]@ when making her statement, that
Sallie appeared to be intoxicated at that time, that she had difficulty
focusing on the questions and did not appear to be Alucid,@ that Sallie would respond to her
questions with questions about the complainant=s condition, and that Sallie gave inconsistent
answers to the questions asked during this initial interview and appeared to be
confused.  Similarly, JasmineCwho was eleven years of age at the time of the
incidentCtestified that she was still scared and upset when she spoke with
Officers Sanchez and Berg at the scene.  Officer Sanchez testified that Jasmine
appeared to be Aunder a lot of stress@ when her statement was taken,
which she attributed to A[Jasmine=s] age and the circumstances that
she had just been in,@ and that she was scared to be
there.  Officer Parker testified that
Jasmine Awas both tired and scared@ and was worried about her mother=s condition at the time he took her statement the
following afternoon.