NO. 07-03-0520-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JANUARY 4, 2006


 ______________________________



STEPHEN ZARATE, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 110TH DISTRICT COURT OF DICKENS COUNTY;



NO. 2261; HONORABLE JOHN R. HOLLUMS, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL, J., and BOYD, S.J. (1)

MEMORANDUM OPINION


 Appellant Stephen Zarate appeals his conviction for the felony offense of
manslaughter and jury-assessed punishment of twenty years confinement and a $10,000
fine. We affirm. 

 Appellant's prosecution arose from the shooting death of Martin Garcia, Jr. in
Dickens County on the evening of June 30, 2003. The evidence presented at trial was
undisputed. It showed Martin and his cousin David Garcia were each working on land in
Dickens County owned by their families. They went to a store in Dickens together to
purchase beer and whisky. At the store they met appellant, with whom each was
acquainted. Appellant told them he might stop by to visit with them later that afternoon. 
Martin and David returned and divided their time between working and drinking. Appellant
arrived about 4 p.m. and the conversation turned to a new scope appellant had purchased
for his rifle. He brought out the rifle and the three men took turns firing it at a fencepost. 
David also fired a pistol appellant had with him. 

 David said he was not knowledgeable about firearms but appellant seemed "to know
what he was talking about." David left about 6 p.m., leaving Martin and appellant together. 
A neighbor of Martin's stopped and visited with the two men for about an hour. The
neighbor left between 8:30 and 9 p.m. Both David and the neighbor said there was no
dispute between appellant and Martin. Subsequent events were presented through the
unchallenged testimony of Dickens County sheriff Ken Brendle and deputy Jimmy Land
based on separate statements appellant made to them. Appellant and Martin discussed
appellant's purchase of cattle from Martin. Appellant related they went to see the cattle and
Martin became angry when appellant said he would have to speak to relatives about the
sale first. They returned to their previous location and had another beer together before
the argument reignited. According to appellant's statements, Martin threatened to shoot
appellant. Appellant retrieved his rifle from his truck and, in one version of his statement,
pointed the rifle in the direction of Martin and fired. His other statement was that he fired
the rifle into the ground. 

 Martin's daughter and son-in-law discovered his body late that evening. When he
heard of Martin's death the next day, David tried to reach appellant at work and contacted
the Dickens County Sheriff's Office to tell them he had last seen Martin with appellant. 
Later that day appellant came to the sheriff's office because he had heard officers wanted
to speak with him. He spoke to deputy Land first. After being advised of his constitutional
rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966), appellant initially said he did not want to talk, but then "slowly started relating a
story" without any interrogation by Land. When Brendle arrived he simply asked appellant
if he wanted to talk, and appellant repeated the same story. Appellant refused to make a
written statement for either officer. 

 Appellant was subsequently indicted for the offense of murder. The case was tried
to a jury. The jury charge, submitted without objection, included a charge and instructions
on the offenses of murder, manslaughter, aggravated assault and deadly conduct. The jury
found appellant guilty of manslaughter and further found he used or exhibited a deadly
weapon during the commission of the offense. The jury also assessed punishment of
twenty years confinement in the Institutional Division of the Department of Criminal Justice
and a $10,000 fine. The trial court rendered judgment in conformity with the jury's verdicts,
including an affirmative finding on use of a deadly weapon. 

 Appellant's three issues on appeal are that the evidence is legally and factually
insufficient to support the conviction, there was no evidence supporting submission of the
jury charge on manslaughter, and that the trial court erred in including a deadly weapon
finding in the judgment. 

 A person commits the offense of manslaughter by recklessly causing the death of
another. Tex. Penal Code Ann. § 19.04(a) (Vernon 2003). A person acts recklessly when
he is aware of but consciously disregards a substantial and unjustifiable risk a result will
occur. Tex. Penal Code Ann. § 6.03(c) (Vernon 2003). The risk must be of such a nature
and degree that its disregard constitutes a gross deviation from the care an ordinary person
in the actor's position would exercise. Id. 

 Appellant presents no challenge to the State's factual allegations or supporting
evidence. He argues that those facts are no evidence he was aware of but consciously
disregarded a substantial and unjustifiable risk of death from his conduct. Appellant offers
no authority in support of that position. (2) He agrees that a defendant's mental state is
generally proven through circumstantial evidence and by inferences drawn from his acts
and surrounding circumstances. Salazar v. State, 131 S.W.3d 210, 213 (Tex.App.-Fort
Worth 2004, pet. ref'd). 

 There is ample authority that pointing a loaded firearm in the direction of another and
firing it meets the Penal Code's definition of recklessness. As the State correctly notes, in
defining the offense of deadly conduct the Penal Code provides, "Recklessness and danger
are presumed if the actor knowingly pointed a firearm at or in the direction of another
whether or not the actor believed the firearm to be loaded." Tex. Penal Code Ann. §
22.05(c) (Vernon 2003). 

 Moreover, recklessness findings have been affirmed in factually similar cases. In
Gaona v. State, 733 S.W.2d 611 (Tex.App.-Corpus Christi 1987, pet ref'd), the court
upheld a conviction based on evidence that included the defendant's statement to officers
he fired a .22 caliber rifle at the ground. Id. at 614-15. The court relied on other facts also
shown here: that the defendant was familiar with firearms and knew the gun was loaded. 
Id. See also Rodriquez v. State, 699 S.W.2d 358, 359 (Tex.App.-Dallas 1985, no pet.)
(firing in general direction of victim sufficient to show recklessness). 

 Findings of recklessness have been upheld even when the defendant did not intend
to point a firearm at the victim. Davis v. State, 757 S.W.2d 386, 388 (Tex.App-Dallas
1988, no pet.) (victim shot while defendant was twirling gun he believed to be unloaded);
Sadler v. State, 728 S.W.2d 829, 831 (Tex.App.-Dallas 1987, no pet.) (spouse shot in
struggle for handgun). See also Yates v. State, 624 S.W.2d 816, 817 (Tex.App.-Houston
[14th Dist.] 1981, no pet.) (victim shot in "quick-draw" contest). The evidence was legally
sufficient to support the jury's finding that appellant acted recklessly. It was not so weak
that it fails to support the finding of guilt beyond a reasonable doubt. Zuniga v. State, 144
S.W.3d 477, 485 (Tex.Crim.App. 2004) (discussing standards for determining factual
sufficiency). Appellant has failed to identify, and our review does not disclose, any contrary
evidence, precluding a determination that the strength of contrary evidence rendered the
evidence of guilt factually insufficient. See id. at 485. Finding no merit in his challenges
to the legal or factual sufficiency of the evidence, we overrule appellant's first issue.

 In his second issue appellant assigns error to the trial court's inclusion of a jury
charge on the offense of manslaughter. He does not deny that manslaughter is a lesser-included offense of murder. See Schroeder v. State, 123 S.W.3d 398, 400 (Tex.Crim.App.
2003) (manslaughter is a lesser-included offense of murder). His challenge is based on
his position there was no evidence of recklessness. Our disposition of appellant's first
issue is also dispositive of his second issue. The trial court did not err in submitting the
charge on manslaughter. In accordance with the procedure for reviewing charge error, we
do not reach the question of whether appellant preserved this complaint by timely objection.
See Middleton v. State, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003) (preservation of charge
error is not an issue until harm is assessed). We overrule appellant's second issue.

 Appellant's third issue presents a challenge to the trial court's inclusion of a deadly
weapon finding in its judgment. He cites Ex parte Flannery, 736 S.W.2d 652 (Tex.Crim.
App. 1987), as listing the only three ways in which a deadly weapon finding may be made,
specifically that (1) the indictment specifically alleges the words "deadly weapon" in
describing the weapon used, and the verdict reads "guilty as charged in the indictment"; 
(2) the indictment names a weapon which is per se a deadly weapon and the verdict reads
"guilty as charged in the indictment"; and (3) a special issue is submitted to the trier of fact
and answered affirmatively. Id. (following Polk v. State, 693 S.W.2d 391, 396 (Tex.Crim.
App. 1985)). 

 The indictment alleged appellant shot the victim with a firearm. The jury's verdict
stated: "We, the jury, find the defendant, STEPHEN ZARATE, guilty of manslaughter. We
further find that the defendant did use or exhibit a deadly weapon, to-wit: a firearm during
the commission of the offense." Appellant argues that because he was not found guilty "as
charged in the indictment" and trial court failed to require a separate finding on the use of
a deadly weapon, the jury's verdict was insufficient to meet the requirements of Flannery. 

 Since its opinion in Flannery, the Court of Criminal Appeals has clarified the ways
in which the requirement of an express finding of a deadly weapon by a jury may be
satisfied when a defendant is found guilty of a lesser-included offense. In Lafleur v. State,
106 S.W.3d 91 (Tex.Crim.App. 2003), the Court held a deadly weapon allegation in the
indictment, (3) together with a deadly weapon allegation in the application paragraph of a
lesser-included charge and an express deadly weapon finding in the jury's verdict are
sufficient evidence of an express finding by the jury. Id. at 99. Each of those elements was
present here. The inclusion of a deadly weapon finding in the trial court's judgment 


was proper. We overrule appellant's third and final issue and affirm the judgment of the
trial court. 


 James T. Campbell

 Justice 






Do not publish.

1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 

2. Based on State v. Lee, 818 S.W.2d 778 (Tex.Crim.App. 1991), overruled on other
grounds, Moore v. State, 969 S.W.2d 4 (Tex.Crim.App. 1998), the State initially responds
that appellant is estopped from asserting the insufficiency of the evidence supporting
conviction of any lesser-included offense because he failed to object to the submission of
those issues to the jury. Cf. Otting v. State, 8 S.W.3d 681 (Tex.App.-Austin 1999, pet.
ref'd, untimely filed), with McLendon v. State, 167 S.W.3d 503, 508 (Tex.App.-Houston
[14th Dist.] 2005, no pet.) (declining to apply Lee to factual sufficiency challenge). 
Resolution of appellant's appeal does not require us to address the application of Lee to
his challenges to the sufficiency of the evidence.
3. The indictment did not specifically allege the firearm was a deadly weapon. That
allegation was unnecessary because a firearm is a deadly weapon per se. Tex. Penal
Code Ann. §1.07(a)(17) (Vernon 2005). Thomas v. State, 821 S.W.2d 616, 618 (Tex.Crim.
App. 1991). 


ing found there to be legally and factually sufficient evidence to support at least
one of the statutory grounds upon which the trial court relied in ordering termination of
Donald's parental rights, we need not address the remaining two grounds upon which the
trial court relied. See In re S.F., 32 S.W.3d at 320. Donald's second and third points of
error are overruled.

 By his first point of error, Donald claims the evidence was legally and factually
insufficient to support the trial court's determination that termination of his parental rights
was in M.B.'s best interest. We disagree. This portion of our inquiry proceeds from the
policy-based presumption that the best interest of a child is usually served by preserving
the parent-child relationship. Wilson v. State, 116 S.W.3d 923, 929 (Tex.App.-Dallas 2003,
no pet.). In determining the best interest of the child, a number of factors have been
considered including: (1) the desires of the child; (2) the emotional and physical needs of
the child now and in the future; (3) the emotional and physical danger to the child now and
in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals; (6) the plans for the child by these individuals; (7) the
stability of the home; (8) the acts or omissions of the parent which may indicate that the
existing parent-child relationship is not a proper one; and (9) any excuse for the acts or
omissions of the parent. Holley v. Adams, 544 S.W.2d at 371-72. These factors are not
exhaustive; some listed factors may be inapplicable to some cases, while other factors not
on the list may also be considered when appropriate. In re C.H., 89 S.W.3d at 27. 
Furthermore, undisputed evidence of just one factor may be sufficient in a particular case
to support a finding that termination is in the best interest of the child. Id. In contrast, the
presence of scant evidence relevant to each Holley factor will not support such a finding. 
Id. Evidence that proves one or more statutory grounds for termination may also constitute
evidence illustrating that termination is in the child's best interest. Id. at 28. The
Department simply must have presented enough evidence from which the factfinder could
reasonably have formed a firm conviction or belief that the child's best interest warranted
termination. In re D.S.A., 113 S.W.2d 567, 574 (Tex.App.--Amarillo 2003, no pet.). 

 Here, the record reveals that: (1) M.B. is a "special needs" child who requires
nebulizer treatments to aid her breathing, occupational therapy to help with muscle rigidity,
medicine two to three times a day for reflux, and speech therapy to assist with her
swallowing deficiencies; (2) M.B.'s condition requires her to attend doctor's appointments
in Fort Worth every month to six weeks; (3) there is a possibility that M.B. may grow out of
some of her special needs, but some of them may "stay with her"; (4) Donald was not, by
his own admission, "in a stable condition [at the time of trial] to take care of her or either put
her nowhere"; (5) M.B.'s caseworker believed that she needed a stable environment, that,
because of her fragile health, she could not live the transient life offered by her father, and
that if she was returned to Donald, she would be in danger of physical or emotional stress;
(6) M.B.'s foster mother is a registered nurse who worked in the neonatal ICU and was
familiar with many of the treatments M.B. required; (7) M.B.'s foster family is the only family
she has ever known, and they desire to adopt her; and (8) while Donald refused to say
whether he used drugs with Tiffany while she was pregnant, he did not believe "that the
drugs have got anything to do by the way M.B. is so slow, because her mama is like that." 
Donald asserts that the Department "failed to establish how, if at all, [he] would adversely
affect the child's present and future emotional and physical needs." The record supports
an opposite conclusion. Furthermore, assuming the Department failed to establish that
Holley factor, there is ample evidence of the others to justify the trial court's decision that
termination of Donald's parental rights was in M.B.'s best interest. See Leal v. Texas Dep't
of Protective & Regulatory Services, 25 S.W.3d 315, 318 (Tex.App.-Austin 2000, no pet.)
(noting that a finder of fact is not required to consider all of the listed factors). Indeed,
undisputed evidence established that Donald has exhibited a pattern of conduct that is
inimical to the very idea of child-rearing. In re C.H., 89 S.W.3d at 28. Thus, without looking
at the evidence in the light most favorable to the verdict, we conclude both the disputed and
undisputed evidence favoring and disfavoring the verdict permitted a reasonable factfinder
to form a firm conviction and belief that termination of the parent-child relationship was in
the best interest of M.B. In re D.S.A., 113 S.W.3d 567, 575 (Tex.App.-Amarillo 2003, no
pet.). Appellant's first point of error is overruled.

 Accordingly, the judgment of the trial court is affirmed. 

 Don H. Reavis

 Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. Donald filed his brief on July 27, 2004, asserting five points of error. With the fourth
point, he attacked the legal and factual sufficiency of the evidence to support the trial
court's finding in its June 9th termination order that he had executed an "unrevoked or
irrevocable affidavit of relinquishment of parental rights." On August 12th, the trial court
signed a nunc pro tunc termination order deleting the finding challenged by Donald. The
corrected order has been made a part of the record on appeal. Discerning that Donald's
point was rendered moot with the filing of the nunc pro tunc order, we will not address it. 

3. By its brief, the Department claimed that Derek Andrews, M.B.'s caseworker,
testified that M.B. was born at 23 weeks. Our review of the record, however, reveals that
he, in fact, asserted she was born at 28 weeks gestation.
4. Donald's fourth point of error attacks the sufficiency of the court's finding that he
executed an irrevocable affidavit of relinquishment. Because the record reveals that the
trial court deleted that finding in its nunc pro tunc termination order, we need not address
his fourth point.
5. The service plan was filed with the court on August 23, 2003. The document
reflects, however, that the Department "gave or mailed a copy of this plan to the parents: 
7/9/2003." 
6. See Tex. Fam. Code Ann. § 262.201 (Vernon 2002).