**Affirmed and Memorandum Opinion filed October 22, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00544-CR

---

**BRIAN MARSHALL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1706045**

---

### MEMORANDUM OPINION

The sole question in this case is whether the evidence is legally sufficient to support a conviction for manslaughter. Our answer is "yes."

### BACKGROUND

The complainant died after she was shot in the forehead at close range. Appellant, her husband, was charged with her murder. He pleaded not guilty to that charge and his case proceeded to a trial by jury.

The uncontroverted evidence established that the complainant was shot in her mother's bedroom, but there were some disputes as to the circumstances leading up to the shooting.

Roosevelt, who was engaged to marry the complainant's mother, testified that he and his fiancée were watching a movie in her bedroom, when the complainant's sister, Alona, came in to ask for a lighter. Roosevelt said that appellant followed Alona into the bedroom, which was unexpected. Appellant had never been in that bedroom before, and no one had invited him inside. Roosevelt also said that appellant came in "hugging" the wall. Appellant opened a closet, went inside, and shut the door behind him.

Roosevelt testified that the complainant then came into the bedroom and followed appellant into the closet, shutting the door behind her as well. Roosevelt said that, within a span of time ranging somewhere between "instantaneously" and ninety seconds, he heard a gunshot. After the gunshot, the complainant came out of the closet and collapsed next to the bed, bleeding and struggling to breathe. Appellant did not flee or say anything; he merely acted "stunned" and began to cry.

Roosevelt testified that, because the closet door was closed, he could not see what had happened inside. But he testified that he never heard any arguing or struggle over a gun.

Alona also testified. She said that, on the morning of the incident, she was using drugs with appellant and the complainant. They all began outside on the patio smoking K2, a synthetic cannabinoid. Alona also indicated that appellant used a substance called "wet," which she described as a type of "embalming fluid" or dipping solution for cigarettes. Alona said that K2 can make a person fall asleep, whereas "wet" can make a person hallucinate or "take you places you probably don't want to go."

At one point, Alona said that she went to speak with her mother, and that appellant followed her into her mother's bedroom. Like Roosevelt, Alona testified that appellant went straight into the closet and closed the door.

Alona testified that she called for the complainant to get her husband, and that the complainant came to the bedroom less than a minute later. Alona testified that the complainant went directly toward the closet, but her testimony was inconsistent as to whether the complainant remained outside the closet or whether she went inside. Notwithstanding that inconsistency, Alona insisted—contrary to the testimony from Roosevelt—that the complainant did not close the closet door. She testified that she saw appellant "instantly" shoot the complainant from inside the closet.

Though she was in the same room as the shooting, the complainant's mother did not testify at all.

The remaining witnesses testified about the investigative process after the shooting. One officer testified that he arrived on scene and arrested appellant, who did not fight or resist. A second officer testified that he collected samples from appellant's hands, and one of the samples tested positive for having all of the composition characteristics of gunshot residue. A third officer testified that he recovered a cigarette stub, which contained the DNA of both appellant and the complainant. And the medical examiner testified that the complainant died from a single gunshot to the forehead, and that a toxicology report showed that her system contained PCP, which is also a hallucinogen.

Appellant did not testify in his own defense, nor did he call any defense witnesses.

The trial court submitted a jury charge containing the charged offense of murder, plus the lesser-included offenses of manslaughter and criminally negligent homicide. Defense counsel argued in closing statements that the jury could not convict appellant under any of those three theories. Counsel reasoned that Alona was not a credible witness because she was high on drugs and her perceptions were distorted. Counsel acknowledged that Roosevelt was sober, but counsel said that Roosevelt did not witness the actual shooting because Roosevelt believed that the shooting happened behind a closed door. Counsel suggested that the prosecution did not prove its case beyond a reasonable doubt because there was a possibility that the gun may have discharged accidentally, perhaps during a tussle or fall.

The jury rejected these defensive arguments and found that appellant was guilty of manslaughter.

## ANALYSIS

In a sufficiency challenge, a reviewing court must determine whether a rational trier of fact could have found the essential elements of an offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The offense here was manslaughter, which has two essential elements: (1) the defendant acted recklessly, and (2) his actions caused the death of an individual. *See* Tex. Penal Code § 19.04(a). When deciding whether the prosecution satisfied its burden of proving these two elements beyond a reasonable doubt, we consider all of the evidence in the light most favorable to the verdict. *See Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006).

Appellant does not mount a significant challenge to the second element, which concerns the *actus reus*. In his brief, appellant acknowledges that "there appears to be sufficient evidence that [he] did in fact shoot the Complainant which resulted in her death." We agree with that statement. Alona directly testified that she saw

4

appellant shoot the complainant, and that testimony must be credited under our standard of review, notwithstanding any conflict with the testimony from Roosevelt, because it supports the jury's ultimate finding. *See Edward v. State*, 635 S.W.3d 649, 656 (Tex. Crim. App. 2021) ("When faced with conflicts in the evidence, a reviewing court shall presume that the fact finder resolved those conflicts in favor of the verdict and defer to that determination.").

Appellant focuses his appellate challenge on the first element, which concerns the *mens rea* of recklessness. Our law defines that mental state as follows:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code § 6.03(c).

Appellant asserts that the evidence is insufficient to prove recklessness for two reasons: first, there was no affirmative evidence that he had any prior knowledge about firearms, or even that the firearm in this case was loaded; and second, there was no specific testimony regarding his exact positioning in relationship to the complainant when the firearm was discharged. Without such evidence, appellant argues that the jury could only speculate that he was aware of, but consciously disregarded, a substantial and unjustifiable risk.

We disagree with each of these reasons.

A defendant's state of mind is a question of fact that must usually be inferred from the surrounding circumstances. *See Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018). If there is evidence beyond a reasonable doubt that a defendant

pointed a firearm at another person, recklessness can be inferred from that surrounding circumstance alone. *See Guzman v. State*, 188 S.W.3d 185, 193 (Tex. Crim. App. 2006) (explaining that "a reckless state of mind may be inferred or presumed from the act of pointing a gun at someone"). Affirmative evidence that a defendant was familiar with firearms or that he knew a particular firearm was loaded may also support a finding of recklessness, but such evidence is not necessary for a jury to make an ultimate finding that a defendant created a risk and consciously disregarded it. *Id.*[1]

There was ample evidence in this case that appellant pointed a firearm at the complainant. Alona testified that she saw appellant shoot the complainant, which implies that he pointed the gun at the complainant. The medical examiner likewise testified that there was stippling on the complainant, indicating that she was shot at close range. Given the obvious dangers of guns, the jury could have reasonably inferred from all of this evidence that appellant knew that he created a risk and that he consciously disregarded it when he pointed the gun at the complainant and discharged it. *See Sadler v. State*, 728 S.W.2d 829, 832 (Tex. App.—Dallas 1987, no pet.) ("It is virtual surplusage to point out that firearms are dangerous instrumentalities, and that their very purpose is to kill or injure should the necessity arise. It is mandatory that they be handled at all times with great care and the failure

---

[1] Appellant suggests that a finding of recklessness cannot be inferred from evidence that the defendant merely pointed a gun at another. He relies on *Gahagan v. State*, 242 S.W.3d 80 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) and *Thomas v. State*, 699 S.W.2d 845 (Tex. Crim. App. 1985), but neither of those cases supports his proposition. In *Gahagan*, our sister court rejected a sufficiency challenge to a conviction for manslaughter based in part on affirmative testimony from the defendant that she was familiar with guns and knew the risks involved with handling them. 242 S.W.3d at 88. Our sister court did not hold that such testimony was necessary to demonstrate recklessness. And in *Thomas*, there was no sufficiency challenge to the conviction for manslaughter at all. Instead, the leading issue was whether the evidence raised the lesser-included offense of criminally negligent homicide.

to do so may be legitimately viewed by the trier of fact as 'a gross deviation from the standard of care than an ordinary person would exercise.'").

Appellant does not cite to any authority that there must be affirmative evidence regarding the exact positioning of the defendant in relationship to his victim, but even if we assumed without deciding that there was such a requirement, the record contained such evidence. Alona testified that she saw appellant "standing up" when he shot the complainant. She also said that she saw the complainant "hit the floor," from which a jury could rationally infer that she had likewise been standing before she was shot. And when that testimony is combined with the testimony from the medical examiner, who said that the complainant must have been shot at close range, a jury could rationally infer that appellant and the complainant were both standing near each other at the time that appellant pointed his gun at her.

Having reviewed the record in the light most favorable to the verdict, we conclude that the evidence was sufficient to support a finding beyond a reasonable doubt that appellant recklessly caused the death of the complainant. And in light of this conclusion, we need not consider appellant's argument that the conviction should be reformed to the lesser-included offense of criminally negligent homicide. *See* Tex. R. App. P. 47.1.

## CONCLUSION

The trial court's judgment is affirmed.

/s/     Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.
Do Not Publish – Tex. R. App. P. 47.2(b).