**Opinion filed December 4, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00165-CR
_____

## SIXTO DANIEL TORRES, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 23433-B**

## M E M O R A N D U M   O P I N I O N

Appellant, Sixto Daniel Torres, was indicted for the murder of Bernardo Aguilar. *See* TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (West Supp. 2024). The jury found Appellant not guilty of murder but convicted him of the lesser-included offense of manslaughter. *See id.* § 19.04. Prior to the commencement of the punishment phase, the State and Appellant negotiated a plea agreement, whereby Appellant would be sentenced to eighteen years' imprisonment in the Institutional

Division of the Texas Department of Criminal Justice for his manslaughter conviction and plead guilty in another pending case (trial court cause number 23332-B) to the first-degree felony offense of possession of cocaine with intent to deliver and be sentenced to fifteen years' imprisonment. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West Supp. 2024). The trial court approved the parties' agreement, sentenced Appellant accordingly, and ordered that the sentences be served concurrently.

Appellant challenges his manslaughter conviction in two issues. In his first issue, Appellant asserts that the evidence is insufficient to support his conviction. In his second issue, he asserts that the trial court erred when it did not sign a judgment of acquittal for the murder charge because the jury only convicted him of the lesser-included offense of manslaughter. We affirm.

## I. *Factual Background*

Appellant and Aguilar were employees of a construction company owned by Appellant's father, Gregorio Torres (Gregorio). On February 12, 2022, Appellant, Aguilar, Gregorio, and two other individuals (Ismael Hernandez and Raul Melendez) were working at a construction site when Hernandez heard a gunshot. Hernandez and Melendez saw Aguilar lying on the ground; Aguilar had sustained a gunshot wound to the back of his head and Appellant was standing near Aguilar's body. Hernandez called 9-1-1, and law enforcement officers arrived at the scene shortly thereafter.

Law enforcement investigated the shooting, identified Appellant as a suspect, and determined that Appellant had left the scene with a firearm in his possession. Appellant was arrested later that afternoon, and gunshot residue (GSR) samples from Appellant's jeans and inside his waistband were obtained. These samples were sent to a forensic lab for testing, the results of which confirmed the presence of gunshot primer residue on Appellant's clothing. On March 10, 2022, Appellant was indicted

for the murder of Aguilar. On May 22, 2022, a volunteer firefighter recovered an unloaded "chrome" revolver and delivered it to law enforcement.

Hernandez testified to the circumstances of the shooting and recalled that he saw Appellant sitting in a pickup shortly before the shooting. Hernandez was hammering an underpin in a ditch, which was approximately two feet from Aguilar, when he heard a gunshot. He looked in the direction of the sound and saw Aguilar's body on the ground. Hernandez then got out of the ditch and saw Appellant standing next to Aguilar's body, "fiddling" with his waistband; however, Hernandez did not see a firearm. According to Hernandez, the pickup was approximately twenty feet from Appellant and Aguilar, and Melendez was approximately eight feet from Aguilar when the shooting occurred. Hernandez stated that Gregorio then grabbed Appellant and said, "[w]hat did you do?" and "[y]ou ruined my company." According to Hernandez, Appellant appeared to be scared. Hernandez further testified that he did not know if the shooting was accidental.

Melendez corroborated Hernandez's testimony. He testified that he was working near Aguilar and Hernandez when he heard a "detonation" and saw Aguilar fall over. Melendez observed that Appellant was standing behind Aguilar, approximately three to four feet from Aguilar's body. Melendez noted that Appellant appeared "static" and unmoving after the shooting, and he recalled Appellant "lifting up his [hoodie]." Melendez also believed that the shooting was accidental.

Gregorio testified that Appellant was living with him and his wife, Amanda Torres, at the time of the shooting, and that he drove Appellant to work that morning. Gregorio testified that: (1) Appellant did not carry any bag or backpack with him to the construction site that morning; (2) he did not observe Appellant with any weapon in his possession that morning; and (3) no gun was in his pickup. Aguilar, Hernandez, and Melendez were in the ditch when Gregorio and Appellant arrived at

3

the construction site; Gregorio operated an excavator while Appellant was looking for a faucet.

At some point, Gregorio heard a loud "bang," and he saw Aguilar lying on the ground. Gregorio approached Aguilar's body and recalled hearing Hernandez say, "He shot him." According to Gregorio, Appellant was standing approximately twenty feet from Aguilar's body when he approached Appellant. At that point, he noticed that Appellant had a "chrome revolver" tucked in his waistband. Gregorio stated that Appellant appeared shocked and scared and recalled that Appellant asked Gregorio if he would "[t]ake him to the house." Gregorio told Appellant that he intended to report the shooting to law enforcement. Appellant then walked away.

Appellant's brother, Gregorio Roman Torres (Roman), testified that he picked up Appellant after the shooting. Roman described Appellant's demeanor as being "in shock" and scared, and he noted that Appellant did not have a firearm on his person at that time. Roman stated that he was worried for his own safety because he believed that "something [had] went wrong in [Appellant's] head" and Appellant had "flipped out" that day. According to Roman, Appellant had a temper.

Appellant's family also testified about Appellant's experience with firearms. Gregorio testified that he knew Appellant had possessed firearms prior to the shooting, but he did not know if Appellant owned a chrome revolver. Gregorio stated that Appellant began learning how to use firearms prior to the shooting, and he knew that Appellant had been to the shooting range before to practice. Amanda testified that she had seen Appellant with a firearm once (but she could not recall the make or model of the firearm) and that she instructed Appellant to remove the firearm from her house because she believed that firearms are unsafe. Roman testified that he knew that Appellant had a silver handgun, but he could not recall the last time he saw Appellant with it. Roman also stated that, although he did not see Appellant with "a lot of guns," he knew that Appellant had been to gun shows

4

prior to the shooting. Roman further testified that Appellant began carrying a gun to work after learning that he had the right to carry a firearm. However, Roman did not know if Appellant had any firearm training or if Appellant had been to a shooting range in the past.

Les McDaniel, a firearm and toolmarks examiner at the Texas Department of Public Safety (DPS) Crime Lab in Lubbock, testified about his examination of the chrome revolver; McDaniel identified it as a Rossi revolver. McDaniel also stated that he believed that the bullet recovered from Aguilar's body was discharged from that revolver.

McDaniel determined that the revolver operated normally and did not have any malfunctions or mechanical defects, and he explained that the revolver could be discharged in two ways. First, he stated that the revolver could be discharged from the single-action position where the hammer is intentionally pulled back by the operator's thumb and then discharged by squeezing the trigger with approximately two pounds of force, which is a low amount of pressure. Second, the revolver could be discharged from the double-action position (with the firearm's hammer in the forward position) by pulling the trigger, which then causes the hammer to move into the back position before it is released. McDaniel testified that between thirteen and fourteen pounds of pressure is required to pull the trigger from the double-action position, which would be the typical amount of pressure used.

McDaniel noted that the revolver did not have a safety mechanism; rather, the revolver's only safety mechanism was the hammer block, which prevented the firearm from discharging in the double-action position if the operator's finger was not touching the trigger. McDaniel testified that he believed an accidental discharge could occur if the revolver was used from the single-action position because the revolver has a "light" trigger in this position. McDaniel also stated that an accidental discharge could occur if an individual attempted to adjust the hammer between the

5

single-action position and the double-action position, and (1) the individual lost control of the hammer while moving it, and (2) the trigger was pulled during this adjustment. Finally, McDaniel stated that the weight of an unholstered revolver in the waistband of one's pants could cause an individual to remove the firearm from their waistband or readjust it.

Detective Lee Kidwell of the Taylor County Sheriff's Office testified about his investigation of the shooting. He stated that he was unable to determine how the shooting occurred, Appellant's motive for the shooting, or whether the shooting was intentional or accidental. Moreover, several law enforcement officers, including Detective Kidwell, testified about their investigation, the general rules of firearm safety, the general dangers of firearms, and the risks associated with accidental shootings. In addition to witness testimony, (1) photographs of the revolver, (2) photographs of the crime scene, (3) a recording of a phone call between Appellant and his mother on February 14, 2022, (4) a copy of the GSR report, (5) a copy of a DNA forensic report, and (6) a copy of McDaniel's ballistics report were admitted into evidence and published to the jury.

## II. *Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007); *Garcia*, 667 S.W.3d at 762 ("[A] reviewing court does not sit as the thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence."); *Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). This standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Garcia*, 667 S.W.3d at 761; *Clayton*, 235 S.W.3d at 778. Thus, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Garcia*, 667 S.W.3d at 762; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

We treat direct and circumstantial evidence equally under this standard. *Isassi*, 330 S.W.3d at 638; *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). The evidence need not directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the defendant's guilt, and circumstantial evidence, alone, can be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to the defendant's guilt if the cumulative force of all incriminating circumstances is sufficient to support the defendant's conviction.

*Hooper*, 214 S.W.3d at 13. Therefore, in evaluating the sufficiency of the evidence, we treat direct and circumstantial evidence equally, and we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *Isassi*, 330 S.W.3d at 638; *Hooper*, 214 S.W.3d at 13.

Finally, we measure the sufficiency of the evidence by the elements of the charged offense as defined by the hypothetically correct charge for the case. *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In this regard, to determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt under the *Jackson* standard, we compare the elements of the offense to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik*, 953 S.W.2d at 240). The hypothetically correct charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

### III. *Analysis*

#### A. *Sufficiency of Evidence*

In his first issue, Appellant contends that the evidence is insufficient to support his conviction for manslaughter. Specifically, Appellant contends that there is insufficient evidence from which a rational juror could infer that he acted recklessly when he shot Aguilar.

Manslaughter is a lesser-included offense of murder.[1] *Roy v. State*, 509 S.W.3d 315, 317 (Tex. Crim. App. 2017) (citing *Cavazos*, 382 S.W.3d at 384); *see*

---

[1]The difference between murder and manslaughter is the actor's culpable mental state. *See Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) (concluding that manslaughter is a lesser

*also* CRIM. PROC. art. 37.09(3) (West 2006). A person commits the offense of manslaughter if he recklessly causes the death of an individual. PENAL § 19.04(a). A person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *See Roy*, 509 S.W.3d at 317–18; *Cavazos*, 382 S.W.3d at 384; *see* PENAL §§ 19.04(a), 6.03(c) (West 2021).

Appellant argues that there is insufficient evidence to support his conviction because (1) the shooting was neither intentional nor accidental, and (2) the evidence does not show that he acted recklessly because no one testified that they saw the shooting or described how Appellant handled the firearm when he shot Aguilar. However, "[i]ntent and knowledge are fact questions for the jury and are almost always proven through evidence of the circumstances surrounding the crime." *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring). A jury may infer intent and knowledge from any facts that tend to prove its existence, "including the acts, words, and conduct of the accused," the method the defendant uses to commit the offense, and "the nature of [the] wounds inflicted on the victims." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (quoting *Manrique*, 994 S.W.2d at 649). Further, even though no direct evidence was presented that specifically described Appellant's intent, by its nature, proof of a culpable mental state must generally be inferred from the circumstances and the jury must rely on circumstantial evidence to determine the issue. *See Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018); *Hooper*, 214 S.W.3d at 13; *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978).

Generally, a jury may infer recklessness based on evidence showing that a defendant was familiar with the use of firearms and that he pointed a firearm in the

included offense to murder because the only difference between the offenses is the required culpable mental state— "intent" versus "recklessness"); *compare* PENAL § 19.02(b)(1), (2), *with id.* § 19.04(a).

direction of the victim. *See Guzman v. State*, 188 S.W.3d 185, 193–94 (Tex. Crim. App. 2006); *Lugo v. State*, 667 S.W.2d 144, 149 (Tex. Crim. App. 1984); *Rice v. State*, No. 11-22-00032-CR, 2023 WL 5109158, at *4 (Tex. App.—Eastland Aug. 10, 2023, no pet.) (mem. op., not designated for publication). In this regard, Texas courts have consistently upheld factual findings that a defendant acted recklessly in situations that involved the alleged accidental discharge of a firearm. *See Gahagan v. State*, 242 S.W.3d 80, 86–87 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (collecting cases). Moreover, because of their nature, "[i]t is mandatory that [firearms] be handled at all times with great care and the failure to do so may be legitimately viewed by the trier of the fact as 'a gross deviation from the standard of care that an ordinary person would exercise.'" *See Sadler v. State*, 728 S.W.2d 829, 832 (Tex. App.—Dallas 1987, no pet.) (quoting PENAL § 6.03(c)).

Here, the State presented evidence that (1) Appellant was familiar with the use of firearms, (2) he had been to shooting ranges on multiple occasions, and (3) he began carrying a firearm to work after learning that he had the right to carry one. Other members of Appellant's household were not familiar with firearms, and his coworkers were either unfamiliar with firearms or were unaware that Appellant had brought a firearm to the construction site that day. As such, the jury could have logically inferred that Appellant was the only person who would have loaded the revolver prior to the shooting, and the only person at the construction site who would have known that the firearm was loaded that day. Further, Appellant was standing behind Aguilar after the shooting, and others thereafter observed that the revolver used in the shooting was unholstered in his waistband. Based on this evidence, it was within the jury's purview to believe or reject that Appellant knew (1) the revolver was loaded or did not ensure that it was not on the day of the shooting, and (2) the gun was lethal if pointed in the direction of Aguilar. Moreover, McDaniel testified that the revolver had a "light" trigger, and that it could only be discharged

10

by pulling the trigger from either the single-action or double-action positions. *See Yates v. State*, 624 S.W.2d 816, 817 (Tex. App.—Houston [14th Dist.] 1981, no writ) (holding there was sufficient evidence to support a manslaughter conviction where a detective testified that the trigger on the firearm was of the type that would discharge only if pulled deliberately). Thus, there is sufficient evidence to support the jury's finding that Appellant was aware of the risk created by his conduct and that he acted recklessly when he shot Aguilar. *See Rice*, 2023 WL 5109158, at *4.

Furthermore, while some witnesses testified that they believed the shooting was accidental, the jury was free to believe all, some, or none of any witness's testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Reyes v. State*, 465 S.W.3d 801, 805 (Tex. App.—Eastland 2015, pet. ref'd) (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)); *see Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. As the trier of fact, it is the jury's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 326; *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. Therefore, when the evidence supports conflicting inferences, we presume that the jury, as the factfinder, resolved any conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt*, 368 S.W.3d at 525–26; *Clayton*, 235 S.W.3d at 778.

We have reviewed the evidence in the light most favorable to the jury's verdict, as we must, and we conclude that the record before us contains sufficient evidence from which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant was guilty of the lesser-included offense of manslaughter.

Accordingly, we overrule Appellant's first issue.

B. *Request to Reform the Trial Court's Judgment*

In his second issue, Appellant argues, correctly, that his manslaughter conviction constitutes an acquittal of the greater offense of murder as alleged in the State's indictment. Consequently, Appellant contends that the trial court's judgment should be reformed to show that he is (1) guilty only of manslaughter, which it does, and (2) acquitted of murder. *See* CRIM. PROC. arts. 37.08, 37.09; *Bowen v. State*, 374 S.W.3d 427, 428, 431–32 (Tex. Crim. App. 2012) (holding that the reformation of a criminal conviction on appeal is permissible, regardless of whether an instruction on a lesser-included offense was requested).

In most instances, the jury is instructed to first decide whether the defendant is guilty or not guilty of the greater offense, and then, and only then, they may consider the defendant's guilt for any submitted lesser-included offense(s); however, the jury may only consider the lesser-included offense(s) *if* they have unanimously found that the defendant is not guilty of the greater offense. *See Sandoval v. State*, 665 S.W.3d 496, 535–37 (Tex. Crim. App. 2022) (discussing the "modified acquittal first" approach to jury verdicts that consider a lesser-included offense). Here, the trial court's charge did not include a verdict form for the jury to make an express finding of "not guilty" for the murder charge. Thus, because the submitted verdict form "did not have places for the entry of not guilty verdicts" for each manner and means presented for the murder charge, Appellant argues that we must reform the trial court's judgment to recite that he was acquitted of "both murder paragraphs."[2] *See Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). We disagree.

We recognize that when a jury is given the option to convict a defendant of either a greater or a lesser-included offense, a guilty verdict on the lesser-included

---

[2]We note that Appellant did not object to or otherwise argue that the jury verdict forms in the trial court's charge were improper or deficient, nor did he argue that a double-jeopardy issue arose, and it does not, because of the form of the trial court's judgment.

offense constitutes an implied acquittal of the greater offense. *Green v. United States*, 355 U.S. 184, 190–91 (1957); *Sandoval*, 665 S.W.3d at 535–37; *State v. Restrepo*, 878 S.W.2d 327, 328 (Tex. App.—Waco 1994, pet. dism'd); *see also Ex parte McAfee*, 761 S.W.2d 771, 773–74 (Tex. Crim. App. 1988) (stating that an acquittal may be either express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge (citing *Price v. Georgia*, 398 U.S. 323, 329 (1970))); *Bargos v. State*, No. 02-19-00354-CR, 2021 WL 386940, at *2 (Tex. App.—Fort Worth Feb. 4, 2021, pet. ref'd) (mem. op., not designated for publication); *Lee v. State*, No. 11-93-00055-CR, 1995 WL 17212034, at *1 (Tex. App.—Eastland June 8, 1995, pet. ref'd) (not designated for publication). Thus, the reformation of the trial court's judgment in the manner suggested by Appellant is neither necessary nor mandated because the jury's verdict of guilt for the lesser-included offense of manslaughter also includes an acquittal of the murder charge. *See Green*, 355 U.S. at 190; *Sandoval*, 665 S.W.3d at 535–37; *see also* CRIM. PROC. art. 37.14.

Accordingly, we overrule Appellant's second issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


December 4, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.